Case 4:19-cv-01570   Document 36   Filed on 09/16/21 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
September 16, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DENNIS WAYNE CAPPS, TDCJ # 01772509, | § § § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:19-1570 |
| ROBERT HERRERA, *et al.*, | § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Dennis Wayne Capps, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), alleges that Defendants forced him to shave his religious beard in violation of his First Amendment rights. Capps proceeds *pro se* and has paid the filing fee. Defendants filed a motion for summary judgment (Dkt. 30) seeking dismissal of all claims, and Capps filed a response (Dkt. 32). Capps also filed a motion for continuance and for discovery (Dkt. 31) and a motion for a hearing (Dkt. 33). The motions are ripe for decision. After reviewing the pleadings, the motions, the briefing and evidence submitted, the applicable law, and all matters of record, the Court concludes that Defendant's motion for summary judgment should be **denied**. Capps' discovery requests will be **denied** at this time and the Court will appoint counsel to represent him at trial. The Court's reasons are explained below.

## I.    BACKGROUND

Capps alleges in this lawsuit that officials at TDCJ's Pack Unit violated his First Amendment right to exercise his religious beliefs when they required him to shave his religious beard. He brings claims against four Defendants in their individual capacities: Warden Robert Herrera, Major Sergio Perez, Lieutenant Mark Temple, and Sergeant Rodney Backhus.[1] Capps seeks permanent injunctive relief ordering Defendants to comply with TDCJ policy regarding religious beards, in addition to nominal, compensatory, and punitive damages (Dkt. 1, at 8-9; Dkt. 4, at 9, ¶ 15).[2] Defendants have asserted qualified immunity and seek summary judgment.

The parties agree that, in 2015, TDCJ officials granted Capps permission to maintain a religious beard (Dkt. 4, at 5, ¶ 6; Dkt. 30-1, at 14). Defendants submit a copy of a TDCJ policy entitled "Offender Grooming," Security Memorandum SM-06.16 ("SM-06.16"), which was updated in March 2018 (Dkt. 30-2). The policy provides that inmates need approval for religious beards, that approved religious beards "shall be no more than fist length and not exceed four inches outward from the face," and that a noncompliant beard "shall be trimmed" (*id*. at 4-5). An inmate who fails to comply with

---

[1]    The Court previously dismissed Capps' claims regarding a violation of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* ("RLUIPA"), a violation of the Due Process Clause, and retaliation (Dkt. 18). Capps' claim under the Free Exercise Clause is the sole remaining claim in this suit. The Court also dismissed Capps' claims against TDCJ, Bryan Collier, and Officer Mark Hurd (Dkt. 5; Dkt. 18).

[2]    Throughout this memorandum opinion, the Court's citations to specific pages in the record refer to the pagination of docket entries on the Court's electronic case-filing ("ECF") system.

the policy will be charged with offense code 24.1, which covers "Refusing to Adhere to Grooming Standards" (*id*. at 5).

The events forming the basis of Capps' claims occurred on July 10-11, 2018. At the time, Capps had a beard that he describes as an expression of his faith as a "Native American with Catholic influence" (Dkt. 4, at 2, ¶ 3). He claims that his beard complied with SM-06.16. He alleges in his pleadings, under penalty of perjury, that Defendants Temple and Backus told him on July 10 that his beard was "improper," but that Temple released him (Dkt. 1, at 3-4; Dkt. 4-1, at 4). He further alleges that on July 11, Defendants provoked, tormented, harassed, and intimidated him about his beard (Dkt. 1, at 4; Dkt. 4, at 8, ¶ 14). He states that, although he informed Defendants that his beard was compliant, Temple threatened the loss of "all of his valuable possessions associated with craft shop privileges" if he did not "remove" the beard (Dkt. 1, at 3-4). On July 11, Capps shaved his beard to avoid the threatened loss of privileges and other punishment (Dkt. 4, at 3-4, ¶ 4).

On July 13, 2018, Capps filed an administrative grievance (Grievance No. 2018165997) alleging that Defendants had forced him to shave and that Temple had "made it very clear that if I refused to remove my religious beard that I would certainly lose all of my possessions and current privileges" (Dkt. 30-1, at 5-6). At Step One, officials denied the grievance:

> An investigation was conducted regarding your complaint and no evidence was found that the above mentioned staff was involved in any form of harassment toward you. Staff did admit to sto[p]ping you in reference to your beard being out of compliance and sending you back to your housing

>to correct the issue. Staff is aware of policy which prohibits such actions. No further action is warranted.

(*id*. at 6). Capps filed a Step Two grievance, alleging again that he had been forced to shave his beard and that Defendants had violated TDCJ policy. The official response, in its entirety, stated:

>An investigation has been conducted into your complaint. SM-06.16 Procedures, II, A, 1 and 3, states [:] "Religious beards shall be no more than fist length and not exceed four inches outward from the face. This may be measured by having the offender grasp the beard with their fist. Facial hair extending beyond the fist shall be considered out of compliance with policy and shall be trimmed. Religious beards shall remain neatly trimmed and clean.["] No further action from this office is warranted.

(*id*. at 4). The response did not address Capps' allegation that Defendants had violated the policy.

Defendants state in their briefing that they "informed Capps that his religious beard was not in compliance and 'instructed [Capps on] what to fix' to correct the violation" (Dkt. 30, at 8) (alteration in original). They further state that "Capps could have simply trimmed his beard to comply with TDCJ policy" (*id*. at 9). However, they do not directly rebut Capps' allegation that they forced him to shave, and have not submitted affidavits or other sworn statements. Rather, they cite only to their own statements during the investigation of Capps' grievance. *See* Dkt. 30-1, at 11 (Warden Perez's statement during grievance investigation states that Capps "was out of compliance" with grooming standards and "was instructed what to fix"); *id*. at 12 (Temple's statement during investigation states "[h]aving offenders comply with grooming standards is not harassment"); *id*. at 13 (Backus' statement during investigation

states that Capps "was stopped and told that his beard was out of compliance"). These statements do not address whether Defendants instructed Capps to shave on July 11.

Defendants additionally argue that records do not support Capps' allegations regarding the threat of lost privileges; that Capps did not in fact lose privileges; and that Capps did not receive a disciplinary case on July 11 (Dkt. 30, at 8). Capps counters that he only avoided punishment because he shaved, and that he did not have the option of disobeying Defendants' instructions (Dkt. 4 at 4, ¶ 4; *id*. at 7, ¶ 11; Dkt. 32, at 12).

## II  STANDARDS OF REVIEW

### A.  Summary Judgment—Rule 56

The defendants have moved for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*. The nonmoving party must present specific facts which show "the existence of a genuine issue concerning

every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (cleaned up).

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (cleaned up). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (cleaned up); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

### B. <u>Qualified Immunity</u>

The defendants have invoked qualified immunity, and the plaintiff bears the burden to negate the defense. *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017). Determination of qualified immunity requires a bifurcated analysis: first, the court must decide "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; and second, the court must determine "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d 154, 169

(5th Cir. 2015) (cleaned up); *see Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 181 (5th Cir. 2016) (cleaned up). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks*, 853 F.3d at 744 (cleaned up). A reviewing court may address the two prongs of the qualified immunity analysis in any sequence, depending on the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017).

On summary judgment, the plaintiff has the burden to point out clearly established law regarding the right in question and to raise a fact issue as to the violation of that right. *See Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021); *Amador v. Vasquez*, 961 F.3d 721, 726-27 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1513 (2021).

**C.** *Pro Se* **Filings**

In reviewing the pleadings, the court is mindful of the fact that the plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id*. Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Although the plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *E.E.O.C. v. Simbaki, Ltd*., 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require *pro se* parties to fundamentally abide by the rules that govern the federal courts. *Pro se* litigants must properly . . . present summary judgment evidence") (cleaned up).

### III. <u>ANALYSIS</u>

Section 1983, 42 U.S.C. § 1983, provides a vehicle for a claim against a person acting "under color of state law," such as a prison official, for a constitutional violation. *See Pratt.*, 822 F.3d at 180; *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002). Defendants seek summary judgment on the merits of Capps' First Amendment claim and on qualified immunity grounds. The Court first addresses whether the facts in the record, accepting Capps' version of disputed facts as true, fail to demonstrate a violation of his

constitutional rights, and next addresses whether Defendants' conduct was objectively reasonable in light of clearly established law.

### A. Violation of First Amendment Right

Prison inmates retain their First Amendment right to exercise their religion. *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987). Prisoners must be afforded "reasonable opportunities" to "exercise the religious freedom guaranteed by the First and Fourteenth Amendment without fear of penalty." *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972); *see Davis v. Davis*, 826 F.3d 258, 265 (5th Cir. 2016). However, an inmate's right "is subject to reasonable restrictions and limitations necessitated by penological goals." *McFaul v. Valenzuela,* 684 F.3d 564, 571-72 (5th Cir. 2012) (cleaned up). A burden on the inmate's right may be constitutionally permissible if the restriction is reasonably related to legitimate penological interests. *See O'Lone*, 482 U.S. at 349 (citing *Turner v. Safley,* 482 U.S. 78, 89 (1987)); *Butts v. Martin*, 877 F.3d 571, 584 (5th Cir. 2017); *Baranowski v. Hart,* 486 F.3d 112, 120 (5th Cir. 2007). When determining whether a restriction is reasonable, courts consider four factors:

> (1) whether the regulation or action has a logical connection to the legitimate governmental interests invoked to justify it; (2) whether the inmate has an available alternative means of exercising the rights; (3) the impact of accommodation on other inmates, guards, and prison resources; and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests.

*McFaul*, 684 F.3d at 572 (cleaned up) (citing *Turner*, 482 U.S. at 89-91); *see Butts*, 877 F.3d at 584-85. Although a plaintiff bringing a RLUIPA claim must show that prison officials placed a "substantial burden" on his religious exercise, the Fifth Circuit does not

require the same showing for a Free Exercise claim. *Butts*, 877 F.3d at 585-86; *McFaul*, 684 F.3d at 571-76; *Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599 (5th Cir. 2008).

Here, TDCJ's grooming policy balances inmates' right to religious exercise with institutional security needs. *See* Dkt. 30-2, at 1 (SM-06.16 states that it serves to "establish guidelines for managing offender grooming standards and to ensure proper identification of offenders at all times"). Defendants argue that SM-06.16 does not violate Capps' First Amendment rights because it is rationally related to a legitimate penological interest. However, Capps does not argue that SM-06.16 is unconstitutional. Rather, he alleges that Defendants violated SM-06.16 and his constitutional rights when they forced him to shave an approved religious beard that complied with the policy. The question therefore is whether Defendants' actions when applying the policy were reasonably related to a legitimate penological interest. *See Butts*, 877 F.3d at 587; *McFaul*, 684 F.3d at 572; *Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989). On this question, genuine issues of material fact preclude summary judgment.

First, the record reflects a genuine issue as to whether Capps' beard complied with SM-06.16 on July 11, 2018. Defendants do not directly address the issue, other than to assert that the "evidence shows that Defendants believed Capps' religious beard did not comply" at the time (Dkt. 30, at 13). Defendants do not elaborate on the basis for their belief, nor do they specify which Defendant or Defendants believed that the beard was not compliant. They have presented no affidavits or other sworn statements regarding the events, relying instead on SM-06.16 itself and their statements in the investigation of Capps' grievance (Dkt. 30, at 13 (citing Dkt. 13-1)). Capps claims under penalty of

perjury that his beard was compliant on July 11 and that he informed Defendants at the time that it complied (Dkt. 1, at 3-4). The record thus reflects a genuine issue of material fact as to whether any correction to Capps' beard was necessary on the day he shaved.

Second, the record reflects a genuine issue regarding whether Defendants forced Capps to shave his religious beard. Defendants do not directly address the point. Their briefing states that unspecified Defendants "instructed [Capps] to return to his cell to correct the discrepancy" between his beard and TDCJ policy, citing only to their statements in the grievance investigation (Dkt. 30, at 13; Dkt. 30-1, at 11-13). They do not identify which Defendant or Defendants gave the instruction, and do not state whether the "correction" they required in this instance was shaving, trimming, or something else. Capps clearly alleges in his pleadings that Defendants forced him to shave. His statements in his contemporaneous grievance, filed within days of the incident, corroborate his account (Dkt. 30-1).

Both of these genuine disputes are material to the First Amendment issue before the Court. If the disputes are resolved in Capps' favor, Defendants violated SM-06.16 and their actions "do not appear to be legitimate." *See Butts*, 877 F.3d at 587 (reversing summary judgment for defendants on an inmate's claim that the defendants violated institutional policy and his constitutional rights when they denied him the right to wear a yarmulke of a certain color); *see also Ashaheed v. Currington*, 7 F.4th 1236 (10th Cir. 2021) (reversing dismissal of an inmate's claim that he was forced to shave his religious beard in violation of institutional policy and his constitutional rights). These fact questions therefore prevent summary judgment.

Defendants argue that summary judgment is appropriate because Capps' claims regarding harassment or threats are unsubstantiated, noting that Capps did not actually lose privileges or receive a disciplinary case. However, Capps specifically alleges that Defendants backed up their instruction to shave with threats to revoke his craft shop privileges, and that he was not disciplined *because* he shaved his religious beard. His statements are competent summary judgment evidence under Rule 56 and, moreover, Defendants do not directly refute the points.[3] The fact that Defendants did not punish Capps after he shaved on July 11 does not warrant summary judgment in their favor.

Finally, Defendants urge summary judgment because, even construing all facts in the light most favorable to Capps, the incident on July 11 was "isolated," thus demonstrating a "*de minimis* burden" on his constitutional rights (Dkt. 30, at 15). As noted above, whether the inmate's right is substantially burdened by the challenged action is not a factor in the Court's analysis of his First Amendment right. *See Butts*, 877 F.3d at 585-86. Defendants are not entitled to summary judgment on this ground.

Summary judgment will be denied on the merits of Capps' First Amendment claim.

### B. Clearly Established Law and Objective Reasonableness

Defendants argue that Capps has not alleged a violation of clearly established law.

---

[3] Defendants contend that, if Capps believed his beard complied with policy, he could have "chosen not to shave" and risked losing his privileges, then challenged Defendants' order through the grievance process, "forcing officials . . . to investigate" (Dkt. 30, at 15). However, even assuming Defendants did not threaten his privileges, Capps would not have been at liberty to disobey an instruction from Defendants to shave his beard. Capps argues that his disobedience of their order would have supplied grounds not only for revocation of his privileges but also for additional punishment (Dkt. 32, at 12).

For qualified immunity, the law in question must be defined on the basis of the case's specific factual context. *Roque v. Harvel*, 993 F.3d 325, 335 (5th Cir. 2021). "[T]he Supreme Court has repeatedly instructed that clearly established law is *not* to be defined at a high level of generality." *Tucker*, 998 F.3d at 173 (emphasis original). However, "in an obvious case, general standards can clearly establish the answer, even without a body of relevant case law." *Roque*, 993 F.3d at 335 (cleaned up); *see Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020). When considering qualified immunity on a motion for summary judgment, courts "must properly credit Plaintiffs' evidence" and "must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions." *Roque*, 993 F.3d at 335 (cleaned up) (citing, *inter alia*, *Tolan v. Cotton*, 572 U.S. 650 (2014)).

In this case, Defendants argue that they are entitled to qualified immunity because "Capps fails to demonstrate that it was clearly established that telling an inmate that he will lose his craft shop privileges if he does not shave his religious beard was a violation of the First Amendment's Free Exercise clause" (Dkt. 30, at 16). This framing of the relevant law omits important disputed and undisputed facts from consideration: whether the beard was approved, whether it complied with SM-06.16, and whether Defendants forced him to shave it. The Court may not disregard these material issues. *See Roque*, 993 F.3d at 335. If Defendants acted in violation of SM-06.16, which was enacted to protect inmates' religious exercise, by forcing Capps to shave a compliant, approved beard, then a reasonable official in Defendants' situation would know that his or her

actions violated clearly established law. *See Butts*, 877 F.3d at 587; *Ashaheed*, 4 F.4th at 1248.

Additionally, genuine issues of fact remain as to whether Defendants' actions were objectively reasonable in light of clearly established law. Defendants' briefing argues that at least some Defendants believed Capps' beard did not comply with SM-06.16 on July 11, citing to their statements during the grievance investigation (*see* Dkt. 30-1, at 11-13). Capps disputes the point, claiming in this court and in his grievance that he informed Defendants that his beard complied and that Defendant Temple, after stopping him on July 10 and questioning him about his beard, released him (Dkt. 1, at 3-4; Dkt. 30-1, at 8). This dispute is material to the qualified immunity analysis.

Because Capps has demonstrated genuine issues of material fact, this court may not resolve the questions on summary judgment. Rather, because "there remain disputed issues of material fact relative to immunity, the jury, properly instructed, may decide the question." *See Tucker*, 998 F.3d at 172 (cleaned up). Defendants' motion for summary judgment on qualified immunity grounds will be denied.

### C. Appointment of Counsel and Other Pending Motions

A district court may appoint counsel to advance the proper administration of justice in exceptional circumstances and where an indigent litigant has colorable claims that will not receive a meaningful hearing without counsel. *See* 28 U.S.C. § 1915(e)(1); *Naranjo v. Thompson*, 809 F.3d 793, 803 (5th Cir. 2015); *Ulmer v. Chancellor*, 691 F.2d 209, 213 (5th Cir. 1982). When deciding whether to appoint counsel, the Court considers the type and complexity of the case, whether the indigent litigant can adequately

investigate and present his case, and the level of skill required to present the evidence. *Baranowski*, 486 F.3d at 126. Although Capps has capably represented himself to this point, the Court finds that trained counsel would benefit Capps to assure proper presentation of his claims at trial. The Court therefore will stay and administratively close this case while it locates volunteer counsel for Capps.

Capps' motion for a continuance to allow additional time to obtain affidavits and conduct discovery (Dkt. 31) will be denied at this time without prejudice to requests from appointed counsel. Given the rulings above, his motion for a hearing and a ruling on the summary judgment motion (Dkt. 33) will be denied as moot.

### IV. CONCLUSION

For the reasons explained above the Court now **ORDERS** as follows:

1. Defendants' motion for summary judgment (Dkt. 30) is **DENIED**.

2. Capps' motion for a continuance and for discovery (Dkt. 31) is **DENIED without prejudice**.

3. Capps' motion for hearing on the summary judgment motion (Dkt. 33) is **DENIED as moot**.

4. This case is **STAYED** and **ADMINISTRATIVELY CLOSED** while the Court locates *pro bono* counsel to represent Capps.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas, this 16th day of September, 2021.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE